UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANE ANDERS,

    Plaintiff,                                      Case No. 20-cv-11991
                                               Hon. Matthew F. Leitman

v.

JOCELYN BENSON *et al.*,

    Defendants.

_____/

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER OR PRELIMINARY INJUNCTION (ECF No. 5)</u>**

Plaintiff Shane Anders is running for the office of Wayne County Prosecutor. At the same time he seeks that office, he wishes to distribute to residents of Wayne County certain pamphlets, flyers, and other documents that are critical of Defendants Kym Worthy (the Wayne County Prosecutor and presumptive Democratic Party nominee for Wayne County Prosecutor) and Judge Timothy Kenny (a Judge on the Wayne County Circuit Court who recently ruled in favor of Prosecutor Worthy in a lawsuit challenging her right to appear on the primary election ballot). Anders wants to communicate his written criticisms of Prosecutor Worthy and Judge Kenny anonymously because he fears that if he attaches his name to them, Worthy, Kenny, and/or others may retaliate against him and his businesses. But a Michigan statute, Mich. Comp. Laws § 169.247(1) (the "Disclosure Statute"), requires candidates for

1

office to identify "the name and address of the person paying" for a "billboard, placard, poster, pamphlet, or other printed matter having reference to … an election [or a] candidate." In this action, Anders alleges that the Disclosure Statute violates the First Amendment on its face and as applied to him.

Now pending before the Court is Anders' motion for a temporary restraining order and/or a preliminary injunction. (*See* Mot., ECF No. 5.) In the motion, Anders asks the Court to grant him the relief he seeks in Count I of his Amended Complaint. (*See id.*) In that Count, Anders seeks, among other things, an order enjoining Defendants Jocelyn Benson (the Michigan Secretary of State) and Cathy M. Garrett (the Wayne County Clerk) "from enforcing" the Disclosure Statute against him. (Sec. Am. Compl., ECF No. 48, PageID.522.)

As explained below, Anders has not shown a strong likelihood of success on his First Amendment claim and he has not otherwise shown that he is entitled to preliminary injunctive relief. The Court therefore **DENIES** his motion for a temporary restraining order and/or preliminary injunction.

I

Anders is a resident of and registered voter in Wayne County, Michigan. (*See* Anders Am. Aff. at ¶2, ECF No. 37, PageID.432.) On July 23, 2020, Anders filed "a declaration of intent with the Wayne County Clerk to run as a write-in candidate in the August 4, 2020 primary for the Republican Party for the office of Prosecuting

Attorney for the County of Wayne." (*Id.* at ¶3, PageID.433.) Anders voted in the August 4, 2020 primary and "properly wrote [his] name in as a write-in candidate for the Republican Party for the office of prosecuting attorney for Wayne County." (*Id.* at ¶¶ 5-6, PageID.433.)

Anders says that now that he has "officially filed to run as a write-in candidate … [he] desires to immediately print and distribute literature that is very critical of Defendants Worthy and Kenny" in relation to the forthcoming November 3, 2020, general election. (*Id.* at ¶¶ 7, 15, PageID.433, 435.) Prosecutor Worthy is the current Wayne County Prosecutor and is the presumptive Democratic nominee for that office in the 2020 general election; Judge Kenny is a judge on the Wayne County Circuit Court. Among other things, the literature that Anders wants to send out will "detail[]" Prosecutor Worthy and Judge Kenny's "alleged misconduct and violations of the law." (*Id.* at ¶8, PageID.434.) The literature will also criticize "Judge Kenny's rulings in election-related matters" – including those in which he ruled in favor of Prosecutor Worthy. (*Id.* at ¶12, PageID.434.)

"Because [Anders] fears that [he] will be retaliated against by [] Defendants Worthy and Kenny, and their supporters, [he] would like to anonymously print and distribute the campaign literature" described above. (*Id.* at ¶13, PageID.435.) But Anders has not yet sent out the literature because it is his understanding that it is "a crime for a person like [him] to print and distribute anonymous campaign literature."

3

(*Id.* at ¶18, PageID.436, citing Mich. Comp. Laws § 169.247(6).) And he is "fearful that Defendants Worthy and Kenny would cause [him] to be prosecuted under [the Disclosure Statute] if [he] proceed[s] with printing and distributing the "anonymous campaign literature." (*Id.* at ¶20, PageID.436.)  Anders also says that Defendants Benson and Garrett "have the statutory duty to enforce" the Disclosure Statute and that neither Defendant has "indicated that they would not enforce" the statute against him if he were to anonymously send out campaign literature critical of Prosecutor Worthy and Judge Kenny. (*Id.* at ¶23, PageID.437.)

## II

On July 26, 2020, Anders filed a multi-count Complaint in this Court against several Defendants. (*See* Compl., ECF No. 1.)  Anders thereafter filed two Amended Complaints. (*See* First Am. Compl., ECF No. 34.; Sec. Am. Compl., ECF No. 48.) Relevant here, in Count I of the Second Amended Complaint, Anders claims that the Disclosure Statute "is unconstitutional, on its face and as applied, for it violates [his] First Amendment right to print and distribute anonymous campaign literature." (*Id.*, PageID.516.)  He seeks, among other things, (1) a declaration from this Court that the Disclosure Statute is unconstitutional and (2) an order "enjoining [Defendants Benson and Garrett] from enforcing [that statute]." (*Id.*, PageID.522.)

On July 27, 2020, Anders filed an emergency motion for a temporary restraining order and/or a preliminary injunction arising out of his First Amendment

4

claim. (*See* Mot., ECF No. 5.) In the motion, Anders seeks to prohibit Defendants Anderson and Benson from enforcing the Disclosure Statute against him. (*See id.*)

The Court set an expedited briefing schedule on Anders' motion (*see* Order, ECF No. 27), and it held a video hearing on the motion on August 11, 2020.

### III

A preliminary injunction "is an extraordinary and drastic remedy." *S. Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). Although the movant "is not required to prove his case in full at a preliminary injunction hearing," *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007), a preliminary injunction should not "be granted lightly." *S. Glazer's*, 860 F.3d at 849.

A district court balances four factors when considering a motion for a preliminary injunction or a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Id.* (quotations omitted). The last two factors "merge when the Government is the opposing party.'" *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"[T]hese are factors to be balanced, not prerequisites to be met." *Id.* "[N]o one factor is controlling." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). "When evaluating these factors for an alleged constitutional violation, the likelihood of success on the merits often will be the determinative factor." *Thompson v. DeWine*, --- F.3d ---, 2020 WL 2702483, at *2 (6th Cir. May 26, 2020) (internal quotation marks omitted). *See also Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (recognizing that in First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of succeed on the merits").

### IV

The Court begins with the likelihood of success factor. Anders has not shown that he has a strong likelihood of success on the merits of his First Amendment claim. This factor therefore weighs heavily against granting him preliminary relief.

### A

As described above, in Anders' Second Amended Complaint and motion, he challenges the constitutionality of the Disclosure Statute. That statute provides that:

> Except as otherwise provided in this subsection and subject to subsections (3) and (4), a billboard, placard, poster, pamphlet, or other printed matter having reference to an election, a candidate, or a ballot question, shall bear upon it an identification that contains the name and address of the person paying for the matter. Except as otherwise provided in this subsection and subsection (5) and subject to subsections (3) and (4), if the printed matter

6

> relating to a candidate is an independent expenditure that is not authorized in writing by the candidate committee of that candidate, in addition to the identification required under this subsection, the printed matter shall contain the following disclaimer: "Not authorized by any candidate committee". An individual other than a candidate is not subject to this subsection if the individual is acting independently and not acting as an agent for a candidate or any committee. This subsection does not apply to communications between a separate segregated fund established under section 551 and individuals who can be solicited for contributions to that separate segregated fund under section 55.

Mich. Comp. Laws § 169.247(1). "A person who knowingly violates this section is guilty of a misdemeanor punishable by a fine of not more than $1,000.00, or imprisonment for not more than 93 days, or both." Mich. Comp. Laws § 169.247(6).

**B**

Anders has not made a strong showing that the Disclosure Statute is unconstitutional on its face. His facial attack on the statute rests almost entirely on the Sixth Circuit's statement that "[a]s a general matter, anonymous political speech is protected by the First Amendment." (Mot., ECF No. 5, PageID.135, quoting *McGlone v. Bell*, 681 F.3d 718, 734 (6th Cir. 2012)). From this statement, he leaps to the conclusion that candidates for public office like him have a clear First Amendment right to distribute anonymous literature about their opponents and other public figures connected to the election.

But the Sixth Circuit's statement was a qualified one. That court recognized that anonymous political speech is "general[ly]" – but not always – protected by the First Amendment. And the Supreme Court has suggested that the First Amendment does not prohibit all disclosure requirements on campaign related communications. *See*, *e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 366 (noting that "[d]isclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities'…and 'do not prevent anyone from speaking'" and that "[i]dentification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected"). Moreover, there appears to be a line of decisions from the Sixth Circuit acknowledging the validity of at least some limitations on election-related anonymous speech. For instance, the Sixth Circuit has rejected First Amendment facial challenges to statutes requiring the disclosure of the identity and/or financier of political advertisements and pamphlets. *See*, *e.g.*, *Kentucky Right to Life v. Terry*, 108 F.3d 637, 641-42, 648 (6th Cir. 1997) (rejecting First Amendment facial challenge to Kentucky statute that "required identification of the sponsor on each paid political advertisement" and holding that disclosure requirement did not "violate[] plaintiffs' First Amendment right to anonymously publish their political views"); *Gable v. Patton*, 142 F.3d 940, 945-46 (6th Cir. 1998) (rejecting First Amendment facial challenge to Kentucky law that "requires that

advertisements supporting a particular candidate contain identification of the sponsor" of that advertisement). Likewise, the Seventh Circuit has opined that if a disclosure statute "merely forbids the candidate and his organization to create the impression that independent voices support him or oppose his opponent, when in fact the voices are those of the candidate himself, playing ventriloquist," then such a statute "is a straightforward antifraud statute unlikely to present serious constitutional problems." *Majors v. Abell*, 317 F.3d 719, 723 (7th Cir. 2003). *See also Majors v. Abell*, 361 F.3d 349 (7th Cir. 2004) (upholding Indiana law "requiring that political advertising that 'expressly advocat[es] the election or defeat of a clearly identified candidate' contain 'a disclaimer that appears and is presented in a clear and conspicuous manner to give the reader or observer adequate notice of the identity of persons who paid for ... the communication'").

Anders has not made any effort to reconcile his facial challenge to the Disclosure Statute with the line of cases described above. Indeed, although Secretary Benson cited *Kentucky Right to Life* and *Citizens United* in her response to Anders' motion (*see* Sec. Benson Resp. Br., ECF No. 33, PageID.331-333), Anders simply ignored them. Given Anders' failure to address the case law that appears to be most on point – to say nothing of his failure to show how his facial challenge may succeed under that body of case law – Anders has failed to show a strong likelihood of success on his facial challenge to the Disclosure Statute.

## C

Anders has also failed to show a strong likelihood of success on his "as applied" challenge to the Disclosure Statute. In *Citizens United*, *supra*, the Supreme Court suggested that a campaign disclosure requirement may be unconstitutional as applied to a particular speaker "if there were a reasonable probability that the [speaker] would face threats, harassment, or reprisals if [the speaker's] name[] w[as] disclosed." *Citizens United*, 558 U.S. at 370. But Anders has not identified or presented any *evidence* that he would suffer threats, harassment, or reprisals if forced to identify himself on the materials he wishes to distribute. In his affidavit submitted in support of his motion, Anders says only that he subjectively "fear[s]" retaliation for his criticisms of Prosecutor Worthy and Judge Kenny. (Anders Am. Aff. at ¶16, ECF No. 37, PageID.435. *See also id.* at ¶¶ 13, 20, PageID.435-436.) At the hearing on Anders' motion, the Court gave his counsel another opportunity to identify actual evidence that Anders faced a meaningful prospect of retaliation for criticizing Prosecutor Worthy and Judge Kenny, and counsel could not do so. Instead, he merely repeated and highlighted Anders' purely subjective fears of retaliation. Simply put, Anders' generalized and subjective "fear" of retaliation – unsupported by any evidence – is insufficient to establish a "reasonable probability" that Anders will face retaliation. *Id.* For that reason (and because, as explained above, Anders has not even attempted to address the most relevant line of cases), Anders has failed

to show a strong likelihood that he will prevail on his as-applied challenge to the Disclosure Statute.

**D**

Less than fifteen minutes before the hearing on Anders' motion, Anders filed an emergency supplemental brief in which he raised a puzzling and contradictory new argument. (*See* Supp. Br., ECF No. 46.) In that brief, Anders contended that the Disclosure Statute does not apply to him at this time because (1) as a technical matter, he is not yet a "candidate" for Wayne County Prosecutor and (2) the Disclosure Statute applies only to materials distributed by a "candidate" or someone working in concert with a "candidate." (*Id.*, PageID.493-494.)

This argument directly conflicts with Anders' prior identification of himself as a "candidate"[1] and with his prior insistence that the Disclosure Statute applies to him for that exact reason.[2] Moreover, this argument – if correct – eviscerates the basis for Anders' First Amendment challenge to the Disclosure Statute. If that

---

[1] *See, e.g.,* Mot., ECF No. 5, PageID.127 ("*Plaintiff Anders was the only candidate who timely filed with the Defendant County Clerk a declaration of intent to run as a write-in candidate as a Republican in the August 4, 2020 primary election for the office of Wayne County Prosecutor*") (emphasis added).

[2] In Anders' affidavit that he filed in support of his motion for injunctive relief, he said that the Disclosure Statute "makes it a crime for a person like [him] to print and distribute anonymous campaign literature." (Anders Am. Aff. at ¶18, ECF No. 37, PageID.436.) By a "person like him," Anders appears to be referencing a candidate for office.

statute does not apply to him,[3] then it plainly does not violate his First Amendment rights. Anders' last-minute argument does not demonstrate that he has any likelihood of success on the merits of his challenge to the Disclosure Statute.

V

Anders has not shown that any of the other injunction factors support preliminary relief. He has not shown that he would suffer irreparable injury absent an injunction because he has not shown that he will suffer any constitutional injury absent an injunction. For the same reason, he has not shown that the public interest would be served by the issuance of an injunction or that the balance of harms favors the issuance of an injunction.

---

[3] At the hearing on Anders' motion, Anders' counsel suggested that Anders reasonably fears that the Disclosure Statute may be erroneously applied to him even though he is not a "candidate." Anders has a remedy for that fear. A Michigan statute allows him to request a declaratory ruling the Michigan Secretary of State concerning whether the Disclosure Statute applies to him at this time. *See* Mich. Comp. Laws § 169.215(2). Anders' counsel is well aware of that remedy. When another client of his challenged the Disclosure Statute in this Court in 2016, another Judge of this Court held that proceedings in abeyance while the challenger sought a ruling from the Secretary of State. *See Davis v. Johnson*, 2016 WL 8224912, at *1 (holding all proceedings in abeyance "while Plaintiff Davis proceeds with the formal administrative process to request a declaratory ruling from Defendant Secretary Johnson, as provided by M.C.L. § 169.215(2)").

## VI

For all of the reasons stated above, Anders has not shown that he is entitled to preliminary injunctive relief. Anders may ultimately persuade the Court that the Disclosure Statute violates the First Amendment on its face or as applied to him, but he has not even come close to making that showing yet. The Court therefore **DENIES** his motion for a temporary restraining order and/or a preliminary injunction (ECF No. 5).

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 13, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764